```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

STEPHEN WINDSOR                                   CIVIL ACTION

VERSUS                                            NUMBER: 10-00202

HOWARD PRINCE, WARDEN                             SECTION: "J"(5)
```

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Stephen Windsor, petitioner's motion to stay, and the State's response. (Rec. docs. 1, 7, 10). For the reasons that follow, it is recommended that Windsor's habeas petition be dismissed with prejudice as untimely and that his motion to stay be denied.

**I.    PROCEDURAL HISTORY**

Petitioner Windsor is a state prisoner who is presently incarcerated at the Hunt Correctional Center, St. Gabriel, Louisiana. By bill of information dated April 22, 1997, James Jasmine and Stephen Windsor were both charged with one count of attempted armed robbery. Windsor alone was charged with illegal

use of a firearm.  Both Windsor and Jasmine pleaded not guilty, and on September 18, 1997, they were tried by a twelve-member jury in Orleans Parish Criminal District Court and were both found guilty as charged.  Thereafter, a hearing was held on the multiple bills filed by the State against both Windsor and Jasmine.  The trial court found them both to be second offenders.  After both waived all legal delays, the trial court sentenced them as follows: 1) James Jasmine was sentenced to twenty-four years and three months at hard labor without benefit of parole, probation and suspension of sentence; 2) Stephen Windsor was sentenced to ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence on the attempted armed robbery count and to twenty years at hard labor without benefit of parole, probation or suspension of sentence to run concurrently on the illegal use of a firearm count.

On May 24, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed Windsor's convictions and the ninety-nine year sentence imposed in connection with his attempted armed robbery conviction.  The matter was remanded to the trial court for resentencing in connection with Windsor's illegal use of a firearm conviction based upon a discrepancy between the sentencing transcript and corresponding court minute entry. State v. Jasmine, et al, 761 So.2d 830 (Table), No. 1998-KA-0243 (La. App. 4 Cir. May

24, 2000) (unpublished opinion).[1]  On September 21, 2001, the Louisiana Supreme Court denied Windsor's writ application.  State v. Windsor, 797 So.2d 61 (La. 2001).  Windsor's conviction became final ninety days later, on December 20, 2001, when the time for seeking a writ of certiorari from the U.S. Supreme Court expired and no application therefor was made.  See U.S. Sup. Ct. R. 13(1); Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003).

On September 19, 2002, counsel filed on Windsor's behalf an application for post-conviction relief with the state district court.[2]  On October 17, 2002, the state district court issued Judgment denying Windsor's post-conviction application on the basis that his claims "were fully litigated on appeal."[3]  On March 25, 2003, the Louisiana Fourth Circuit reversed, finding that Windsor's claim of ineffectiveness of counsel was not addressed on appeal, and remanded the matter to the district court "for an evidentiary hearing on the issue of ineffective assistance of counsel."  State v. Windsor, No. 2002-K-2495 (La. App. 4 Cir. March 25, 2003)

---

[1] A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 5 of 15.

[2] A copy of Windsor's state post-conviction application is contained in the State rec., vol. 3 of 15, p. 248.

[3] A copy of the district court's Judgment is contained in the State rec., vol. 3 of 15, p. 278.

(unpublished opinion).[4]  On January 16, 2004, the Louisiana Supreme Court denied the State's writ application seeking a reversal of the state appellate court's adverse March 25, 2003 decision.  State ex rel. Windsor v. State, 864 So.2d 624 (La. 2004).

On July 16, 2004, the district court, pursuant to the Louisiana Fourth Circuit's remand, conducted an evidentiary hearing following which, on September 3, 2004, the court issued Judgment denying Windsor's application for post-conviction relief based upon its finding that Windsor had not shown that his counsel was ineffective.  On November 29, 2004, the Louisiana Fourth Circuit Court of Appeal denied Windsor's writ application, finding that "the trial court did not err by denying his ineffective assistance of counsel claim."  State v. Windsor, No. 2004-K-1946 (La. App. Nov. 29, 2004) (unpublished opinion).[5]  On April 1, 2005, the Louisiana Supreme Court likewise denied Windsor's writ application, State v. Windson [sic], 897 So.2d 601 (La. 2005), and on November 28, 2005, denied Windsor's application for reconsideration.  State ex rel. Windsor v. State, 916 So.2d 125 (La. 2005).

On February 29, 2008, Windsor filed with the state

---

[4]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 8 of 15, p. 1.

[5]A copy of the state appellate court's November 29, 2004 unpublished opinion is contained in the State rec., vol. 10 of 15.

district court a "Motion to Vacate the Illegal Multiple Offender Adjudication and Sentence."[6]  On May 21, 2008, the state district court issued Judgment denying Windsor's motion to vacate.[7]  On July 21, 2008, the Louisiana Fourth Circuit Court of Appeal, finding "no error in the district court's judgment denying relator's motion to vacate an illegal multiple offender adjudication", denied Windsor's writ application.  State v. Windsor, No. 2008-K-0819 (La. App. 4 Cir. July 21, 2008) (unpublished opinion).[8]  On May 15, 2009, the Louisiana Supreme Court likewise denied Windsor relief, denying his writ application based upon La.C.Cr.P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995), along with La.C.Cr.P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).  State ex rel. Windsor v. State, 8 So.3d 574 (La. 2009).

On September 18, 2008, while his motion to vacate was still pending before the Louisiana Supreme Court, Windsor filed a second application for post-conviction relief with the state

---

[6]A copy of Windsor's motion to vacate is contained in the State rec., vol. 11 of 15.

[7]A copy of the state district court's May 21, 2008 Judgment is contained in the State rec., vol. 11 of 15.

[8]A copy of the state appellate court's July 21, 2008 opinion is contained in the State rec., vol. 11 of 15.

district court.[9]  On October 15, 2008, Windsor filed a supplemental brief in support of his second post-conviction application.[10]  On October 30, 2008, the state district court issued Judgment denying petitioner relief as untimely pursuant to La.C.Cr.P. art. 930,8.[11]  On December 18, 2008, the Louisiana Fourth Circuit Court of Appeal, finding "no error in the district court's 30 October 2008 judgment", denied Windsor's writ application.  State v. Windsor, No. 2008-K-1420 (La. App. 4 Cir. Dec. 18, 2008) (unpublished opinion).[12]  On November 6, 2009, the Louisiana Supreme Court likewise denied Windsor relief, denying his writ application based upon La.C.Cr.P. art. 930.8 and State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995).  State ex rel. Windsor v. State, 21 So.2d 306 (La. 2009).  On January 8, 2010, the state supreme court denied Windsor's application for reconsideration.  State ex rel. Windsor v. State, 24 So.3d 868 (La. 2010).

On January 13, 2009, while his second post-conviction

---

[9] A copy of Windsor's second post-conviction application is contained in the State rec., vol. 13 of 15.

[10] A copy of Windsor's supplemental brief is contained in the State rec., vol. 13 of 15.

[11] A copy of the state district court's October 30, 2008 Judgment is contained in the State rec., vol. 13 of 15.

[12] A copy of the state appellate court's December 18, 2008 unpublished opinion is contained in the State rec., vol. 13 of 15.

relief application was still pending before the Louisiana Supreme Court, Windsor filed a "Motion for Writ of Mandamus" with the Louisiana Fourth Circuit complaining that both the district court and the appellate court, in their opinions denying his second post-conviction application, failed to consider Windsor's supplemental memoranda which he filed with both courts in support of his second post-conviction application.  Pursuant to his writ of mandamus, Windsor sought an order from the state appellate court directing the district court to address his supplemental brief.[13]  On February 11, 2009, the Louisiana Fourth Circuit Court of Appeal denied Windsor's writ application, providing: "Unlike relator represents, this court reviewed the two claims raised by him in his supplemental application for post-conviction relief in writ 2008-K-1420 and found he was not entitled to relief."  State v. Windsor, No. 2009-K-0090 (La. App. 4 Cir. Feb. 11, 2009) (unpublished opinion).[14]

On January 12, 2010, Windsor filed the instant federal habeas corpus petition.[15]  In his federal habeas petition, Windsor

---

[13]A copy of Windsor's writ of mandamus is contained in the State rec., vol. 15 of 15.

[14]A copy of the state appellate court's unpublished February 11, 2009 opinion is contained in the State rec., vol. 15 of 15.

[15]This January 12, 2010 filing date was ascertained via the Court's use of the "mailbox rule".  Under this rule, a pleading

raises the following claims: 1) that police officials failed to provide him with the necessary Miranda warning prior to interrogating him and failed to provide exculpatory evidence; 2) that prosecutors knowingly presented false police testimony at trial; and, 3) that counsel was ineffective in failing to properly question State witnesses about Windsor's illegally obtained statement and the victim's inability to identify him as the perpetrator. In its response, the State does not contest the fact that Windsor has exhausted his state court remedies, but argues that Windsor's petition is untimely under 28 U.S.C. §2244(d) and that is should be dismissed as such. (Rec. doc. 10). Also before the Court is Windsor's motion to stay and to hold this matter in abeyance pending the resolution of his third post-conviction application which is presently pending within the state court system. (Rec. doc. 7).

**II. ANALYSIS**

    **A. TIMELINESS**

---

filed by a prisoner acting pro se is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. See Colarte v. Leblanc, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application)

### 1.  28 U.S.C. §2244(d)(1)(A)

Under 28 U.S.C. §2244(d)(1)(A), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996)(effective April 24, 1996), state prisoners like Windsor have one year from the date that their convictions become final to timely seek federal habeas relief. Section 2244(d)(2) further provides that the time during which a prisoner has a properly filed application for post-conviction relief or other collateral review pending before the state courts is not counted against the one-year limitation period. Although the State has done so in this case, the one-year time bar may be raised by the Court <u>sua</u> <u>sponte</u>. <u>Kiser v. Johnson</u>, 163 F.3d 326, 328-29 (5th Cir. 1999).

As noted in the procedural history set forth above, subsequent to the date that his conviction became final on December 20, 2001, Windsor had no challenges to his convictions pending before the state courts until he filed his first post-conviction application on September 19, 2002. By that time, two hundred sixty-eight (268) days of the one year allowed by §2244(d) had already passed. Windsor's post-conviction application and the appeals from it remained pending before the state courts until no later than November 28, 2005, when the Louisiana Supreme Court denied Windsor's application for reconsideration following its

decision of April 1, 2005 denying Windsor's post-conviction relief. At that point, the §2244(d) limitation period undoubtedly began running again and had expired by the time that Windsor filed, on February 29, 2008, his "Motion to Vacate the Illegal Multiple Offender Adjudication and Sentence".

### 2.   28 U.S.C.§2244(d)(1)(D)

Windsor seeks to extend his prescriptive period by arguing that the provisions of §2244(d)(1)(D), rather than §2244(d)(1)(A), should be applied in the instant matter. Under §2244(d)(1)(D), prescription commences to run on "the date on which the factual predicate of the claim or claims presented <u>could have been discovered through the exercise of due diligence</u>. [Emphasis added.]"

Windsor's claims for federal habeas corpus relief are based upon the following "factual predicates": 1) the initial and supplemental police reports which allegedly revealed that the victim could not identify Windsor from a photographic lineup and revealed that Windsor had been questioned by police prior to receiving his <u>Miranda</u> warnings (rec. doc. 1, pp. 7 and 12); and, 2) the State's response to Windsor's motion for bill of particulars which allegedly revealed that the victim could not identify Windsor as the perpetrator (rec. doc. 1, p. 17). Windsor asserts that he did not obtain this evidence until October 31, 2007, when he

received a copy of the district attorney's files. (Rec. doc. 11). As such, Windsor argues that under the provisions of §2244(d)(1)(D), his one-year statute of limitations did not commence to run until October 31, 2007.

As emphasized above, §2244(d)(1)(D) provides that prescription commences to run on the date that the factual predicate for a petitioner's claims "could have been discovered through the exercise of due diligence." By virtue of said language, §2244(d)(1)(D) "does not convey a statutory right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." Hill v. Rader, Civil Action No. 09-1819, doc. no. 2, p. 8 (W.D. La. Jan. 5, 2010) (Report and Recommendation, Magistrate Judge Karen L. Hayes), adopted, 2010 WL 555479 (W.D. La. Feb. 16, 2010), citing Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998); see also Johnson v. Lambdin, 2007 WL 521920, *3 (M.D. Fla. Feb. 15, 2007), and Redmond v. Jackson, 295 F.Supp.2d 767, 772 (E.D. Mich. Dec. 9, 2003).

Under Louisiana's public records law, La. R.S. 44:1 *et seq.*, Windsor could have attained the district attorney's files, containing the factual predicates for Windsor's habeas corpus claims, upon the finality of his convictions in December, 2001. Instead, Windsor waited until September 19, 2006, to make such a

11

request.[16]  Clearly, waiting almost five years before seeking the district attorney's files does not exemplify due diligence on Windsor's part.

Additionally, as the State notes in its Response (rec. doc. 10, pp. 10 and 11), two of the factual predicates, the initial police report and the State's response to Windsor's motion for bill of particulars, were contained in the record of both Windsor's trial and direct appeal.  As such, they were available to Windsor prior to the finality of his conviction, yet Windsor did not raise the claims arising from these factual predicates until September 18, 2008, when he filed his second application for state post-conviction relief.

Finally, regarding Windsor's claim that police interrogated him prior to advising him of his Miranda rights, the alleged questioning took place in Windsor's presence.  He was aware in 1997, at the time he was questioned by police, whether he was properly advised of his Miranda rights prior to questioning.  Thus, clearly, Windsor did not exercise due diligence in waiting until September 18, 2008, to raise his claims relating to the alleged

---

[16]The September 19, 2006 inquiry date was ascertained from correspondence dated October 6, 2006 from the Orleans Parish District Attorney's Office to Windsor which references Windsor's "Public Records Request of September 19, 2006".  A copy of the October 6, 2006 correspondence is attached to Windsor's habeas petition (rec. doc. 1).

failure on the part of police officials to properly provide him with Miranda warnings.

Based upon the above, the Court finds that Windsor is not entitled to a delay, under §2254(d)(1)(D), until October 31, 2007, before prescription commenced to run. Windsor clearly did not exercise due diligence in attaining the factual predicates for his habeas corpus claims. Accordingly, Windsor's petition is time-barred absent a basis for equitable tolling.

### 3. Equitable Tolling

Equitable tolling of prescription is justified only in "'rare and exceptional circumstances.'" Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), quoting Davis v. Johnson, 158 F.3d 806 (5th Cir 1998), cert. denied, 526 U.S. 1074 (1999). It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996). The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of §2254 relief. Coleman, 184 F.3d at 403.

Windsor has presented no evidence reflecting that he was deterred by matters outside his control which prevented him from

diligently pursuing federal habeas relief. Accordingly, the claims set forth in the petition that is presently before the Court have prescribed and should be dismissed as untimely under §2244(d).

### B.   MOTION TO STAY

As noted earlier, also before the Court is Windsor's motion to stay wherein he asks that the above-captioned matter be stayed pending the resolution of his third post-conviction application by the state courts. (Rec. doc. 7). Petitioner asserts that the pending state post-conviction application contains presently unexhausted claims in the nature of "newly discovered evidence" which casts doubts upon his convictions and sentences. The "newly discovered evidence" to which Windsor refers consists of the voir dire transcript from Windsor's trial, the guilty plea form associated with Windsor's prior conviction, and an affidavit from his co-defendant, James Jasmine, confessing to the attempted armed robbery crime for which Windsor was convicted.

In Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court held that, in some circumstances, it is appropriate for a federal district court to stay a habeas corpus proceeding in which a petitioner has filed a "mixed petition" containing both exhausted and unexhausted claims in order to allow the petitioner to litigate his unexhausted claims in state court and then return to federal court to obtain review of his perfected

petition. "[S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and "... the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277. "On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

  Having carefully weighed the Rhines factors, the Court does not believe that a stay of this matter is appropriate. First, the petition that is presently before the Court is not a "mixed" one containing both exhausted and unexhausted claims; rather, it contains claims that have already been duly considered and rejected by the Louisiana Supreme Court. Second, Windsor's habeas petition was not filed in a timely fashion. Third, the majority of the "newly discovered" evidence upon which Windsor's third state post-conviction application is based, i.e., the voir dire transcript and the guilty plea form from his prior conviction, is not new, but rather, could have been discovered earlier if Windsor had exercised due diligence. Fourth, while the Court expresses no opinion as to

whether petitioner will ultimately be entitled to post-conviction relief by the state courts, affidavits like the one he purportedly has from his co-defendant, James Jasmine, are viewed by the Fifth Circuit with extreme suspicion, Spence v. Johnson, 80 F.3d 989, 1003 (5th Cir.), cert. denied, 519 U.S. 1012 (1996), because "... the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Townsend v. Sain, 372 U.S. 293, 317 (1963). See also Shaver v. Ellis, 255 F.2d 509, 511 (5th Cir. 1958)(even the confession by another person does not render a conviction void and subject to collateral attack via habeas corpus).

In short, the habeas claims that are presently before the Court are untimely. In light of the nature and quality of the claims that were recently discovered by Windsor and which form the basis of his pending, third state post-conviction application, the Court believes that those claims should be litigated independently of the above-captioned matter.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Windsor's habeas petition be dismissed with prejudice as untimely and that his motion to stay be denied.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate

judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[17]

    New Orleans, Louisiana, this  22nd  day of _____October_____, 2010.

                                              _____
                                                     ALMA L. CHASEZ
                                       UNITED STATES MAGISTRATE JUDGE

---

[17] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.